UNITED STATES of America

v.

David W. SERIANNE, Chief Aviation Electrician's Mate (E–7), U.S. Navy.

NMCCA 200900330.

U.S. Navy–Marine Corps Court of Criminal Appeals.

25 Nov. 2009.

PERLAK, J., delivered the opinion of the Court in which VINCENT, MITCHELL and BOOKER, S.JJ., and PRICE, MAKSYM and CARBERRY, JJ., concur. GEISER, C.J., and BEAL, J., filed separate opinions concurring in the result.

For Appellant: Capt Robert E. Eckert, USMC.

For Appellee: LT Michael E. Maffei, JAGC, USN.

## PUBLISHED OPINION OF THE COURT

PERLAK, Judge:

This case is before us on an interlocutory appeal by the Government, filed pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). The issue presented is whether the military judge erred in granting a defense motion to dismiss a dereliction of duty charge based, *inter alia*, on a determination that the compelled disclosure of a civilian arrest was an incriminating testimonial communication whose constitutionality was unchanged by considerations of military necessity. For the reasons that follow, we conclude that the military judge's ruling was correct in law and deny the Government's appeal.

### Facts

The facts pertaining to this appeal are not in dispute and are amply developed in the record of proceedings to date.

Following arraignment, the appellee challenged Charge I and its specification. The relevant charge alleges that the appellee was derelict in the performance of his duties, in violation of Article 92, UCMJ, 10 U.S.C. § 892, by willfully failing to report to military authorities his own civilian arrest for driving under the influence of alcohol. The Government argues that the duty at issue is articulated in Chief of Naval Operations Instruction (OPNAVINST) 5350.4C, Drug and

Alcohol Abuse Prevention and Control.[1] The specific duty at issue reads as follows:

> *All personnel* are responsible for their personal decisions relating to drug and alcohol use and are fully accountable for any substandard performance or illegal acts resulting from such use. Members arrested for an alcohol-related offense under civil authority, which if punished under the UCMJ would result in a punishment of confinement for 1 year or more, or a punitive discharge or dismissal from the Service (e.g., DUI/DWI), shall promptly notify their CO. Failure to do so may constitute an offense punishable under Article 92, UCMJ.

OPNAVINST 5350.4C, ¶ 8n, at 17 (emphasis in original).

The military judge, on a motion made by the appellee, ruled that the duty imposed by OPNAVINST 5350.4C violates the appellee's 5th Amendment protection, guaranteed in the U.S. Constitution, against compelled self-incrimination, and dismissed Charge I and its specification. Appellate Exhibits VIII and XXXIV. The Government now appeals the military judge's ruling.

### Standard of Review

In reviewing an interlocutory appeal by the Government, we "may act only with respect to matters of law." Art. 62(b), UCMJ, 10 U.S.C. § 862; R.C.M. 908(c)(2). We are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous," and we lack the "authority to find facts in addition to those found by the military judge." *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). However, "[w]e conduct a *de novo* review of [the military judge's] conclusions of law." *United States v. Stevenson*, 52 M.J. 504, 505 (N.M.Ct.Crim.App.1999), *rev'd on other grounds*, 53 M.J. 257 (C.A.A.F.2000); *see also United States v. Greene*, 56 M.J. 817, 822 (N.M.Ct.Crim.App.2002).

### Discussion

■ The Fifth Amendment to the U.S. Constitution guarantees that one shall never be "compelled in any criminal case to be a witness against [oneself]." U.S. Const. amend. V. The UCMJ further states that "no person subject to this chapter may compel any person to incriminate himself...." Art. 31(a), UCMJ, 10 U.S.C. § 831(a). The privilege against compulsory self-incrimination has been described as "the mainstay of our adversary system of criminal justice," *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and " 'one of the great landmarks in man's struggle to make himself civilized,' " *Ullmann v. United States*, 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956)(quoting Griswold, *The Fifth Amendment Today* (1955), at 7).

The privilege against compulsory self-incrimination forbids the compulsion of incriminatory statements that are "testimonial or communicative [in] nature." *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)(addressing the Fifth Amendment implications of a compulsory blood draw). Thus, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)(citing *United States v. Hubbell*, 530 U.S. 27, 34–38, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000)). This case presents a matter of first impression within military jurisprudence, namely, whether ordering a servicemember to inform his or her command of an arrest for driving under the influence compels an incriminatory and testimonial statement and, if so, whether a regulatory exception or military necessity applies to permit such compulsion. Government Brief of 13 Jul 2009 at 4–18.

A testimonial communication is one that "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct.

---

1. Paragraph 8 of OPNAVINST 5350.4C requires action by various parties, starting with the very highest echelons of the Navy, down to the unit command level, and ultimately to the individual Sailor, in furtherance of the policy objectives of the instruction. The required actions include prevention, detection, and treatment, but also focus on areas that are essentially punitive in nature.

2341, 101 L.Ed.2d 184 (1988). "There are very few instances in which a verbal statement, either oral or written, will not convey information or assert facts. The vast majority of statements thus will be testimonial. . . ." *Id.* at 213, 108 S.Ct. 2341. In the written realm, while the mere production of documents has generally been held to be nontestimonial, even the production of documents may implicitly communicate a fact. *Compare United States v. Oxfort*, 44 M.J. 337, 340 (C.A.A.F.1996)(holding that requiring the possessor of classified documents to deliver them to an authorized official does not have "testimonial significance"), *with Hubbell*, 530 U.S. at 36–37, 120 S.Ct. 2037 (holding that "the act of producing documents in response to a subpoena may have a compelled testimonial aspect").

OPNAVINST 5350.4C, ¶ 8n, requires that servicemembers "notify their CO" of their arrest for driving under the influence. This notification can seemingly be accomplished either by the servicemember orally alerting his command or, as the Government argues, simply delivering a copy of the arrest report, although the instruction does not specify the manner of notification. Government Brief at 10.

We see no basis, however, to distinguish between the testimonial aspect of an oral versus written notification of one's arrest and, in the context of OPNAVINST 5350.4C, both are testimonial. Albeit a seemingly less direct conveyance of information, the compelled production of that information in written form does little to blunt its testimonial quality. The purpose behind the privilege against compulsory self-incrimination is supportive of this conclusion. As interpreted by the Supreme Court, the privilege seeks to "spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government." *Doe*, 487 U.S. at 213, 108 S.Ct. 2341 (footnote omitted). OPNAVINST 5350.4C demands the revelation, directly or indirectly, of facts relating a servicemember to an offense and, in that sense, we conclude that the communication demanded, whether orally or in writing, is testimonial.[2]

Moving to the question of incriminating statements, an incriminatory fact is one that, if disclosed, would pose "a real danger of legal detriment" to an individual or, in the case of self-incrimination, to the proponent of that fact. *Rogers v. United States*, 340 U.S. 367, 372–73, 71 S.Ct. 438, 95 L.Ed. 344 (1951). In order for the privilege against compulsory self-incrimination to be invoked, the detriment must be " 'real and appreciable' " and " 'not a danger of an imaginary and unsubstantial character.' " *Brown v. Walker*, 161 U.S. 591, 599, 16 S.Ct. 644, 40 L.Ed. 819 (1896)(quoting *Queen v. Boyes*, 1 B. & S. 311, 321). Incriminatory statements are not only those that would support a conviction in and of themselves, but also "those which would furnish a link in the chain of evidence needed to prosecute [an individual] for a federal crime."[3] *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)(citing *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950)). As such, "[c]ompelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *Hubbell*, 530 U.S. at 38, 120 S.Ct. 2037 (quoting *Doe*, 487 U.S. at 208 n. 6, 108 S.Ct. 2341).

To be clear, we are mindful that the likelihood of a compelled self-report "touching off a chain reaction . . . is not the litmus test for self-incrimination." *United States v. Medley*, 33 M.J. 75, 77 (C.M.A.1991); *see also United States v. Heyward*, 22 M.J. 35, 37 (C.M.A. 1986)("While the information disclosed may focus attention on the reporting servicemember and may eventually lead to criminal

---

**2.** *See generally Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**3.** "To invoke the privilege, it is not necessary that the witness show that his testimony would be certain to subject him to prosecution, or that it will prove the whole crime, unaided by other evidence. It is enough if there is a reasonable possibility of prosecution, and if the testimony, although falling short of proving the crime in its entirety, will tend to a conviction when combined with evidence from other sources." *In re Kave*, 760 F.2d 343, 354 (1st Cir.1985)(citing *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).

charges being brought against him, this possibility alone does not invalidate the reporting requirement."). The Government points to *Medley* as supportive of its argument that the reporting of an arrest is not incriminatory, Government Brief at 6, however the facts of that case and *Heyward* are inapposite to the ones now before us. In *Medley*, the appellant was convicted of dereliction of duty in failing to report the drug use of others that she observed and " 'she was convicted of failing to report *only as to those occasions on which she herself did not use drugs.*' " *Medley*, 33 M.J. at 77–78 (quoting *United States v. Medley*, 30 M.J. 879, 880 (A.F.C.M.R.1990))(emphasis in original). Similarly, the Air Force instruction at issue in *Heyward* imposed a duty to report the drug use of others and, as such, CAAF held that "[t]his requirement is facially neutral, and no admission of criminal activity by the declarant is apparent." *Heyward*, 22 M.J. at 37.

In considering the scenario we now address, CAAF has explicitly distinguished the incriminatory effect of a duty to report others from a duty to report oneself, holding that "where, at the time the duty to report arises, the witness to drug abuse is already an accessory or principal to the illegal activity that he fails to report, the privilege against compelled self-incrimination may excuse his non-compliance." *Id.* at 37. Thus, while not wholly dispositive, we remain persuaded that the privilege against compulsory self-incrimination "protects against *any disclosures* that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" against the declarant. *Kastigar*, 406 U.S. at 445, 92 S.Ct. 1653 (citation omitted). This principle was echoed by CAAF when it held that a brig guard could not be convicted of dereliction of duty in failing to report the drug use of prisoners under his charge when it was reasonable for him to expect that doing so would "necessarily incriminate" him in other offenses. *United States v. Dupree*, 24 M.J. 319, 321 (C.M.A.1987).

In the present case, it was reasonable for the appellee to believe that the reporting of his own arrest would lead to further disclosure of incriminating evidence, namely, the evidence obtained during his arrest for driving under the influence of alcohol, and would not only provide a link in the chain of an investigation but more probably cause the initiation of a criminal investigation by the Navy into his conduct. *See Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968)(holding a communication to be incriminating when an individual was "required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt")(footnote and citation omitted).

The Government contends, however, that the public nature of an arrest and the public record generated incident to an arrest vitiate any incriminatory attributes of reporting one's own arrest. Government Brief at 7. We disagree. While a matter of public record like an arrest report has, by some courts, been held to be non-incriminating,[4] such reports plainly contain adverse matter and not only furnish a link in the chain of an investigation but very often trigger an investigation that would lead to incriminating evidence. Similarly unpersuasive is the Government's apparent contention that the independent discovery of the appellee's arrest by his command militates against a finding that the arrest was incriminatory. *Id.* at 7–8. "The judgment as to whether a disclosure would be 'incriminatory' has never been made dependent on an assessment of the information possessed by the Government at the time of interrogation...." *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 81, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). We are likewise unconvinced by the Government's argument that the inadmissibility of the appellee's arrest at trial supports the contention that an arrest is not incriminating. Government Brief at 8. Admissibility at trial is not the yardstick by which we measure the

---

4. *See Pasdon v. City of Peabody*, 417 F.3d 225, 228 (1st Cir.2005); *In re Maurice*, 73 F.3d 124, 126 (7th Cir.1995); *Morrison v. United States,* 491 F.2d 344, 346–47 (8th Cir.1974); *Hagen v. Porter*, 156 F.2d 362, 367 (9th Cir.1946).

incriminatory qualities of a statement or fact, but rather we consider the degree to which that statement or fact places an individual in real jeopardy or leads to incriminatory evidence. *See Brown,* 161 U.S. at 599, 16 S.Ct. 644; *Hubbell,* 530 U.S. at 37, 120 S.Ct. 2037.

■ Having concluded that OPNAVINST 5350.4C compels an incriminatory testimonial communication, we are entreated by the Government to apply a regulatory exception to the instruction's violation of the Fifth Amendment. Government Brief at 11. Referred to as the "required records exception" in the case of documents, the regulatory exception is invoked when the constitutional interests of the individual must be balanced with the public need and instructs that "[t]he Fifth Amendment is not violated when the Government is allowed 'to gain access to items or information vested with . . . [a] public character.'" *Oxfort,* 44 M.J. at 340–41 (quoting *Baltimore City Department of Social Services v. Bouknight,* 493 U.S. 549, 557, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990)); *see also California v. Byers,* 402 U.S. 424, 427–28, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). The basic principle of this exception is that "[i]f the Government requires documents to be kept for a legitimate administrative purpose, neither the content nor the act of production of these documents are protected by the Fifth Amendment." *United States v. Swift,* 53 M.J. 439, 453 (C.A.A.F.2000)(citing *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) and *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, (1927)).

In determining if OPNAVINST 5350.4C is entitled to a regulatory exception, we consider the following: "(1) whether the disclosure requirement is essentially regulatory as opposed to criminal in nature; (2) whether the regulation focuses on a highly selective group inherently suspect of criminal activities; and (3) whether there is more than a mere possibility of incrimination but a significant link in a chain of evidence." *Oxfort,* 44 M.J. at 341 (internal citations and quotation marks omitted). We conclude that the disclosure requirement imposed by OPNAVINST 5350.4C fails the first prong of this analysis. The focus of OPNAVINST 5350.4C is decidedly

punitive and attributes great emphasis to the role of commanders in disciplining servicemembers who are involved in "alcohol-related misconduct." OPNAVINST 5350.4C, ¶ 6e(1), at 5 ("commands *will* discipline as appropriate and process for administrative separation . . .")(emphasis added). While the Government highlights the non-criminal ends of the instruction, the instruction explicitly delegates responsibility to unit commanders to "review status of personnel involved in drug use and alcohol abuse incidents and take appropriate disciplinary and/or administrative action. . . ." OPNAVINST 5350.4C, ¶ 8l(1), at 14. In this sense, the instruction is punitive in effect in that it "promotes the traditional aims of punishment-retribution and deterrence." *United States v. Fischer,* 61 M.J. 415, 420 (C.A.A.F.2005)(citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

Additionally persuasive in our finding that OPNAVINST 5350.4C is not "essentially regulatory" is the nature of the offense which it addresses. *See id.* (including as a factor in judging the punitive effect of a regulation "whether the policy is invoked as a result of behavior that is already a crime"). Much like the wagering activities in *Marchetti* or the subversive activities in *Albertson,* driving under the influence is "very widely prohibited under both [military] and state law," *Marchetti,* 390 U.S. at 44, 88 S.Ct. 697, and represents "an area permeated with criminal statutes," *Albertson,* 382 U.S. at 79, 86 S.Ct. 194. This instruction is inapposite to the far more innocuous topic of automobile accidents addressed by the California "hit and run" statute considered in *Byers. Byers,* 402 U.S. at 430, 91 S.Ct. 1535 (observing that the California "hit and run" statute "was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents.").

We also note that the disclosure requirement of OPNAVINST 5350.4C, ¶ 8n, is inconsistent with superior competent authority. United States Navy Regulations, Section 1137, provides that "[p]ersons in the naval service shall report as soon as possible to superior authority all offenses under the Uniform Code of Military Justice which come under their observation, *except when such persons are themselves already criminally*

*involved in such offenses at the time such offenses first come under their observation."* (Emphasis added). This court has previously held that the reporting requirement of Article 1137 is "valid and permissible," basing that conclusion on the fact that it "eliminates a reporting requirement in instances where a person is already criminally involved in offenses he would otherwise be required to report." *United States v. Bland,* 39 M.J. 921, 923 (N.M.C.M.R.1994).

In requiring the disclosure of a servicemember's arrest for driving under the influence, we hold that OPNAVINST 5350.4C compels an incriminatory testimonial communication for which no exception exists.[5,6]

## Conclusion

Based on our review of the record, we hold that the military judge did not err as a matter of law in dismissing Charge I and the specification thereunder. Accordingly, the Government's appeal is denied. The case is remanded for further proceedings not inconsistent with this opinion. R.C.M. 908(c)(3).

Senior Judge VINCENT, Senior Judge MITCHELL, Senior Judge BOOKER, Judge PRICE, Judge MAKSYM, and Judge CARBERRY concur.

GEISER, Chief Judge (concurring in the result).

I concur in the result, but not for the reason cited by the majority. I would find the relevant section of Chief of Naval Operations Instruction (OPNAVINST) 5350.4C unconstitutionally vague and therefore unenforceable. Although the majority briefly addresses this point in their footnote 6, it is not dispositive to the majority opinion.

I specifically find the requirement that servicemembers report "an alcohol-related offense under civil authority, which if punished under the Uniform Code of Military Justice *would result* in a punishment of confinement for 1 year or more, or a punitive discharge or dismissal from the service ..." to require knowledge of future events that servicemembers cannot possibly possess. While servicemembers could be expected to know or determine without difficulty the maximum possible punishment for a particular offense, it is unreasonable to require them to divine what "would result" if the case were punished at court-martial.

I do not concur with the majority opinion insofar as it finds that the relevant reporting

---

**5.** We are likewise not persuaded by the Government's argument that "military exigencies" exist to uphold the otherwise unconstitutional disclosure requirement of OPNAVINST 5350.4C. Government Brief at 16 (citing *Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975)). Without question, "[d]rug abuse by members of the military has long been regarded as a serious threat," *Heyward,* 22 M.J. at 36 (citing *Murray v. Haldeman,* 16 M.J. 74, 79 (C.M.A.1983)), and our superior court has emphasized the importance of reporting drug offenses. *Medley,* 33 M.J. at 77. Nonetheless, "[i]t is now settled that the protections of ... the entire Bill of Rights ... are applicable to the men and women serving in the military services of the United States unless expressly or by necessary implication they are made inapplicable." *United States v. Ezell,* 6 M.J. 307, 313 (C.M.A. 1979) (citations and footnote omitted). While, a "military necessity" has been found to, on occasion, qualify the Fourth Amendment protections enjoyed by servicemembers against unreasonable searches and seizures, *United States v. Unrue,* 47 C.M.R. 556, 559–60, 1973 WL 14783 (C.M.A. 1973), we find no support for the argument that a servicemember's Fifth Amendment protection against compulsory self-incrimination may similarly be curtailed.

**6.** We also note that the disclosure requirement of OPNAVINST 5350.4C is considerably vague. The instruction compels a servicemember to report an arrest for "an alcohol-related offense under civil authority, which if punished under the UCMJ *would* result in a punishment of confinement for 1 year or more, or a punitive discharge or dismissal from the Service...." OPNAVINST 5350.4C, ¶ 8n, at 17 (emphasis added). We are mindful "that criminal responsibility should not attach where one could not reasonably understand that his or her contemplated conduct is proscribed." *United States v. Moore,* 58 M.J. 466, 469 (C.A.A.F.2003)(citing *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). The same principle applies when one is required to engage in certain activity when there is a condition precedent. Although we need not rule on any potential vagueness of the instruction today, we observe that the duty imposed on servicemembers to know which civil offenses "would" result in specific punishments may ask the impossible of servicemembers, that is to discern what exact punishment they will, not may, receive before any charges are drafted.

requirement in OPNAVINST 5350.4C violates servicemembers' 5th Amendment right against self-incrimination. The cases cited in the majority opinion quite rightly focus on disclosures which would, in and of themselves, provide evidence of servicemembers' actual wrongdoing not what they were accused of doing. An accusation is not evidence that can be used against an individual at court-martial and does not directly lead to such evidence.

The majority opines that by reporting an arrest, an accused would be, in effect, pointing military authorities at police reports which may well contain or perhaps refer to some actual evidence of a crime. As noted by the court in *United States v. Medley*, 33 M.J. 75, 77 (C.M.A.1991), the mere likelihood of a compelled self-report "touching off a chain reaction ... is not the litmus test for self-incrimination." The majority's reading of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is, in my opinion, overly broad. To permit servicemembers to not report anything that "could lead to other evidence that might" be used against them must, in my opinion be read in the context of *Medley.*

Arguably, servicemembers who witness drug use by subordinates in which they was wholly uninvolved would, under the majority analysis, be exempt from reporting the incident if the criminals in question knew of and would likely report other unrelated criminal offenses the witnesses might have committed. I interpret the 5th Amendment right against self-incrimination to be a protection against providing actual evidence of misconduct or information which would directly reveal evidence that was not otherwise known such as the location of key piece of evidence or the identity or even the existence of an eyewitness to the crime. Simply informing your command that civil authorities have charged you with a crime does not, in my opinion, rise to this level.

BEAL, Judge (concurring in the result).

I concur in the result for the reason stated in the first two paragraphs of Chief Judge Geiser's concurring opinion.

While I believe the mandates of Chief of Naval Operations Instruction (OPNAVINST) 5350.4C might present a constitutional dilemma if a convening authority chooses to criminally prosecute a servicemember who complies with the instruction, I also believe the instruction serves a legitimate administrative purpose to ensure that information regarding drug or alcohol related offenses is properly brought to the attention of commanders who have a responsibility to ensure appropriate administrative action is taken, e.g. report or reassess the member's qualifications for promotion or to hold a security clearance. In other words, it is appropriate to require servicemembers to put themselves on report for administrative purposes.

In cases where a convening authority might choose to refer charges against an accused that stem from the conduct self-reported in compliance with the order, I believe the proper remedy in certain cases would be to dismiss the charge or charges stemming from the self-reported conduct. Had the accused self-reported his civilian arrest in compliance with OPNAVINST 5350.4C, and if his self-reporting was the sole basis for the accuser's preferral of charges, then I believe the Fifth Amendment right against self-incrimination would have barred his prosecution for the underlying misconduct, i.e., in this case the proper remedy would be to dismiss the Article 111 charge, not the Article 92 charge.