UNITED STATES, Appellee

v.

Paul J. OXFORT, Cryptologic Technician
Communications Seaman U.S. Navy,
Appellant.

No. 94–0282.
CMR No. 91–2649.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 31, 1995.

Decided Aug. 30, 1996.

Certiorari Denied Jan. 6, 1997.

See 117 S.Ct. 692.

338

For Appellant: *Captain J.F. Havranek,* JAGC, USN (argued); *Major Hagen W. Frank,* USMC (on brief); *Lieutenant L. Burnett,* JAGC, USNR.

For Appellee: *Lieutenant David M. Harrison,* JAGC, USN (argued); *Colonel T.G. Hess,* USMC, *Commander S.A. Stallings,* JAGC, USN, *Lieutenant Commander David B. Auclair,* JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was convicted at Yokosuka, Japan, of violating a

lawful general regulation by wrongfully removing, copying or failing to properly safeguard classified materials (3 specifications); housebreaking; and violating a federal statute relating to the safeguarding of classified materials (4 specifications), in violation of Articles 92, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 930, and 934, respectively. The convening authority approved the sentence by the military judge of a dishonorable discharge, 15 years' confinement, total forfeitures, and reduction to pay grade E-1. The Court of Military Review[1] affirmed. We granted review of the following issue:[2]

> WHETHER THAT PORTION OF 18 USC § 793(e) REQUIRING UNAUTHORIZED POSSESSORS OF NATIONAL DEFENSE MATERIAL TO DELIVER THE MATERIAL TO AN OFFICIAL AUTHORIZED TO RECEIVE IT VIOLATES APPELLANT'S ARTICLE 31(a), UCMJ, RIGHTS WHERE COMPLIANCE WITH THAT MANDATE WOULD HAVE NECESSARILY INCRIMINATED HIM BOTH IN OTHER VIOLATIONS OF THE SAME STATUTE AND OF THE UCMJ.

We hold that the requirement in 18 USC § 793(e) for the "unauthorized" possessor of classified information to deliver the material to an authorized official does not violate Article 31(a), UCMJ, 10 USC § 831(a), or the Fifth Amendment to the Constitution.

## FACTS

This issue arises from specification 3 of Charge III, under which appellant was convicted of violating 18 USC § 793(e) by his failure to return classified documents to a person authorized to receive them.

Appellant removed numerous classified messages from a Sensitive Compartmented Information Facility (SCIF) at Yokota Air Base, Japan, with the dual intention of passing them along to individuals who were not "authorized to receive" them and to show a "lack of security" at the command. These documents were later found by Air Force Security Police Investigators when they searched appellant's car after he had been apprehended by the Japanese police on unrelated matters. The search took place on the Yokota Air Base after the car had been removed from the Japanese impoundment lot. The record does not reveal whether any Japanese nationals ever saw or took possession of any of the documents. Appellant agreed with the military judge that his possession of the messages in his car was "unauthorized."

## DISCUSSION

The phrases in the Fifth Amendment that "No person ... shall be compelled in any criminal case to be a witness against himself" and Article 31(a) that "No person ... may compel any person to incriminate himself ...." are vague. Mil.R.Evid. 301(a), Manual for Courts-Martial, United States (1995 ed.), expands on them by recognizing that these expressions of privilege only protect "evidence of a testimonial or communicative nature." *See also Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976). The issue in this case centers on the following: First, what is a testimonial or communicative act; second, is there a required-records exception to the protection accorded a testimonial or communicative act; and third, if the act of production of the documents is incriminating, is there limited testimonial immunity for such production?

## TESTIMONIAL OR COMMUNICATIVE ACT

█ For an act "to be testimonial" or communicative, it "must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Pennsylvania v. Muniz*, 496 U.S. 582, 589, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528 (1990), quoting *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341,

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. We also granted review (40 MJ 41) of two other issues disposed of adversely to appellant's interest in *United States v. Roller*, 42 MJ 264 (1995)(Issue II), and *United States v. Mitchell*, 39 MJ 131 (CMA 1994)(Issue III).

2347–48, 101 L.Ed.2d 184 (1988). The Fifth Amendment and Article 31(a) prevent compelling a defendant to furnish direct evidence as to past criminal acts. *See, e.g., Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911). An individual may not be asked questions about known relationships with criminals or particular facts and circumstances surrounding a crime. *See, e.g., Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *United States v. Jones,* 31 MJ 189 (CMA 1990).

■ Certain acts are not considered testimonial or communicative in nature: *e.g.,* compelled giving of body fluids: *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood sample); *United States v. Armstrong,* 9 MJ 374 (CMA 1980) (blood sample); *Murray v. Haldeman,* 16 MJ 74 (CMA 1983) (urine specimen); compelled handwriting: *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *Gilbert v. California,* 388 U.S. 263, 266, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); *United States v. Harden,* 18 MJ 81 (CMA 1984); compelled voice exemplars: *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Wade,* 388 U.S. 218, 222–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967); *United States v. Akgun,* 24 MJ 434 (CMA 1987); *United States v. Chandler,* 17 MJ 678 (ACMR 1983); slurred speech: *Pennsylvania v. Muniz,* 496 U.S. at 590–91, 110 S.Ct. at 2638, 2644 (at least eight Justices concluded that the "slurred nature" of Muniz' speech was not "testimonial"); requiring a suspect to don or remove clothes: *United States v. Wade, supra* at 222, 87 S.Ct. at 1929–30; *Holt v. United States,* 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910); or to supply fingerprints: *Schmerber v. California, supra* at 764, 86 S.Ct. at 1832.

Likewise, compelling a defendant to sign a consent form authorizing a bank to disclose certain account records does not elicit a testimonial or communicative act. *Doe v. United States,* 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). According to Justice Blackmun:

There are very few instances in which a verbal statement, either oral or written, will not convey information or assert facts. The vast majority of verbal statements thus will be testimonial and, to that extent at least, will fall within the privilege.

*Id.* at 213–14, 108 S.Ct. at 2349–50.

■ Only when a person is "compelled to be a 'witness' against himself" by "relat[ing] a factual assertion or disclos[ing] information" is there a resulting testimonial or communicative act. *Id.* at 210, 108 S.Ct. at 2347–48. The privilege does not apply when the defendant is not required to disclose any personal knowledge. *Id.* at 217, 108 S.Ct. at 2351. "[I]t is not enough [to make it "privileged"] that the compelled communication is sought for its content. The content itself must have testimonial significance." *Id.* at 211 n. 10, 108 S.Ct. at 2348 n. 10.

■ Setting aside the act of production, the requirement under the statute that the possessor of national defense material deliver them to an authorized official does not have "testimonial significance." Appellant is not required to make any statement expressly or by implication concerning these documents. They do not contain any factual assertions by appellant or convey any information from appellant to the Government because they are not prepared or annotated by appellant. Thus, other than the act of production, returning the document is not compelled testimony or a compelled response.

### REQUIRED–RECORDS EXCEPTION

■ Assuming testimonial significance to the communication, the privilege does not protect an individual from turning over organizational documents or property. *Braswell v. United States,* 487 U.S. 99, 100, 108 S.Ct. 2284, 2285–86, 101 L.Ed.2d 98 (1988) (requiring custodian of corporate records to turn over subpoenaed records, even when they might incriminate possessor of documents). The Fifth Amendment is not violated when the Government is allowed "to gain access to items or information vested with … [a] public character." *Baltimore City Department of Social Services v. Bouknight,* 493 U.S. 549,

557, 110 S.Ct. 900, 906, 107 L.Ed.2d 992 (1990).

■ In 1911, Justice Holmes commented as follows concerning an order to produce an accountant's books: "The question is not of testimony but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep." *In re Harris,* 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 732 (1911). The Court has further refined Justice Holmes' language to limit the Government's authority to request information based on (1) whether the disclosure requirement is "essentially regulatory" as opposed to criminal in nature, *Grosso v. United States,* 390 U.S. 62, 68, 88 S.Ct. 709, 713–14, 19 L.Ed.2d 906 (1968); (2) whether the regulation focuses on "a highly selective group inherently suspect of criminal activities," *Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965); and (3) whether there is more than "a 'mere possibility' of incrimination" but "a significant 'link in a chain' of evidence." *Marchetti v. United States,* 390 U.S. 39, 48, 88 S.Ct. 697, 702–03, 19 L.Ed.2d 889 (1968)(footnote omitted); *United States v. Williams,* 29 MJ 112, 115–16 (CMA 1989). Under the required-records exception, the Government may obtain information it needs for civilian regulatory reasons even if it might incriminate the possessor. *See, e.g., Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 856–58, 104 S.Ct. 3348, 3357–58, 82 L.Ed.2d 632 (1984) (holding that statutory requirement compelling college students to register for draft in order to qualify for loans (*id.* at 844, 104 S.Ct. at 3350–51) did not violate Self–Incrimination Clause).

The Court has refined this limited access to those instances when the Government has "a sufficient relation between the activity sought to be regulated and the public concern so that the Government can constitutionally regulate or forbid the basic activity concerned, and can constitutionally require the keeping of particular records...." *Sha-*

*piro v. United States,* 335 U.S. 1, 32, 68 S.Ct. 1375, 1391, 92 L.Ed. 1787 (1948).

In *Shapiro,* the Supreme Court held (5–4) that the Fifth Amendment did not prevent compelling production of the defendant's customary business records required to be kept under the Emergency Price Control Act. Otherwise, in *Marchetti v. United States,* 390 U.S. at 55–57, 88 S.Ct. at 706–07, the Supreme Court held that the required-records doctrine did not apply where defendant would have been convicted for failing to register and pay an occupational tax for engaging in the proscribed business of wagering.

Justice Harlan in *Marchetti* compared this case to *Shapiro* and explained why the required-records doctrine did not apply, stating:

> Each of the three principal elements of the [required-records] doctrine, as it is described in *Shapiro,* is absent from this situation. First, petitioner Marchetti was not, by the provisions now at issue, obliged to keep and preserve records "of the same kind as he has customarily kept"; he was required simply to provide information, unrelated to any records which he may have maintained, about his wagering activities. This requirement is not significantly different from a demand that he provide oral testimony. Second, whatever "public aspects" there were to the records at issue in *Shapiro,* there are none to the information demanded from Marchetti. The Government's anxiety to obtain information known to a private individual does not without more render that information public; if it did, no room would remain for the application of the constitutional privilege. Nor does it stamp information with a public character that the Government has formalized its demands in the attire of a statute; if this alone were sufficient, the constitutional privilege could be entirely abrogated by any Act of Congress. Third, the requirements at issue in *Shapiro* were imposed in "an essentially non-criminal and regulatory area of inquiry" while those here are directed to a "selective group inherently suspect of criminal activities." The United States' principal interest is evidently the collection of revenue, and not

the punishment of gamblers; but the characteristics of the activities about which information is sought, and the composition of the groups to which inquiries are made, readily distinguish this situation from that in *Shapiro*.

390 U.S. at 56–57, 88 S.Ct. at 706–07 (citations omitted).

In *Braswell*, Chief Justice Rehnquist noted that "the official records and documents of the organization that are held by [the agent] in a representative rather than a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate [the agent] personally." 487 U.S. at 107, 108 S.Ct. at 2289, quoting *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). As the Supreme Court commented in *Bouknight*: "When a person assumes control over items that are the legitimate object of the government's noncriminal regulatory powers, the ability to invoke the privilege is reduced." 493 U.S. at 558, 110 S.Ct. at 906. Certainly, the privilege is reduced even more when the custody of the documents is illegal.

█ The required-records exception applies in this case. There is little evidentiary cost to the accused, a clear interest by the Government in protecting the records, and an interest that is not aimed "at a highly selective group inherently suspect of criminal activities." *Albertson v. SACB*, 382 U.S. at 79, 86 S.Ct. at 199. The social cost of requiring the defendant to turn over these documents is minimal, if even non-existent, depending on the act of production. The classified document did not require appellant to relate a factual assertion or disclosure, or any personal knowledge, and the content itself did not have "testimonial significance." *See Fisher v. United States*, 425 U.S. at 412, 96 S.Ct. at 1581. However, the issue does arise as to whether surrender of the documents, or what is commonly called the act of production, is testimonial.

## ACT OF PRODUCTION

Whether the act of production is testimonial has perplexed the Supreme Court. *Bras-well v. United States* and *Fisher v. United States*, both *supra*. The Court addressed this question in *Fisher* and held that the act of production was not of testimonial significance, because the location of the papers was "a foregone conclusion." 425 U.S. at 411, 96 S.Ct. at 1581.

This view was sharply criticized by Justice Brennan in his separate opinion in *Fisher*, where he stated: "[M]erely because the Government could readily have otherwise proved existence" of the document does not mean that its surrender is not of testimonial significance. *Id.* at 428, 96 S.Ct. at 1589. Later in *Braswell* this issue was again addressed. Chief Justice Rehnquist distinguished *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), *citing United States v. White*, 322 U.S. 694, 696, 64 S.Ct. 1248, 1250, 88 L.Ed. 1542 (1944). 487 U.S. at 113–15, 108 S.Ct. at 2292–94. He stated that a corporate agent assumes the risk of producing documents as part of the job, but not the risk of oral testimony. 487 U.S. at 113–14, 108 S.Ct. at 2292–93. He reasoned that recognizing the production privilege for custodians of records "would have a detrimental impact on the Government's efforts to prosecute 'white collar crime[.]'" *Id.* at 115, 108 S.Ct. at 2293–94. To give use immunity for the act of production would also pose a problem for the Government because the act of production might taint other evidence. *Id.* at 116–17, 108 S.Ct. at 2294–95.

Justice Kennedy, writing also for Justices Brennan, Marshall, and Scalia in *Braswell*, indicated that the majority was "manipulat[ing]" the Fifth Amendment by not stating that the act of production was indeed a "testimonial act." *Id.* at 120, 125, 108 S.Ct. at 2296, 2299.

█ Here, there are diverse means of production. Thus, like the Court in *Bouknight*: "We are not called upon to define the precise limitations that may exist upon the State's ability to use the testimonial aspects" of producing the documents in a prosecution. 493 U.S. at 561, 110 S.Ct. at 908.

Article 31(a) of the Uniform Code of Military Justice and the Fifth Amendment of the

Constitution protect an individual's right not to incriminate oneself. Nevertheless, the provisions of 18 USC § 793(e) do not compel a violation of those rights. Clearly there was an act of production involved here, but for appellant this was not a testimonial act. Further, even if this act had any testimonial significance, it is excluded from protection under the required-records exception as found by the Supreme Court.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (concurring in the result):

I would simply resolve appellant's constitutional claim against him for the reasons stated in *United States v. Morison,* 604 F.Supp. 655, 662 (D.Md.), *appeal dismissed,* 774 F.2d 1156 (4th Cir.1985). There, the District Court said:

SELF–INCRIMINATION

Morison also argues that § 793(e) is unconstitutional because it requires a sacrifice of the Fifth Amendment right against self-incrimination. Section 793(e) provides that one who is in unauthorized possession of a document or information and who willfully retains it or fails to deliver it to the official entitled to receive it is guilty of an offense. Defendant argues that this is "tantamount to a requirement that one who determines that he is in unauthorized possession of documents covered by this section must disclose this fact to a government official." The government has responded by noting that the documents could be returned anonymously, an argument which the defendant calls "ingenuous." There is some merit to the defendant's argument that an anonymous return would not solve the problem, because the government could find out through fingerprint analysis, etc., who had been in possession of the document. One wonders, however, who the government would prosecute after going to all that trouble. The statute does not punish or prohibit simply being in unauthorized possession; the statute punishes those who, finding themselves in unauthorized possession, willfully retain or fail to return [sic] to the proper government official. Therefore, an individual would not incriminate himself by publicly returning a document to the proper official, because the second element of the crime would not be present. The statute on its face therefore does not require a defendant to sacrifice his right against self-incrimination and is not unconstitutional.

EVERETT, Senior Judge (concurring in the result):

Under the rationale of *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), I believe that Congress lawfully can impose a requirement that anyone entrusted with documents affecting the national security not willfully retain those documents or fail to deliver them to the officer or employee of the United States entitled to receive them. In my view, the potentially disastrous consequences of the violation are so great that an accused should not be entitled under the Fifth Amendment to excuse noncompliance on grounds of self-incrimination.

However, I also conclude that implicit in the language of 18 USC § 793(e) is a legislative intent that someone who delivers national defense documents or information "to the officer or employee of the United States entitled to receive it" is not subject to the risk of having this act of production used to incriminate that person.* In view of the importance of national defense documents or information, I infer that Congress never intended to allow the act of production to be used in evidence at a later trial by the prosecution. Therefore, under 18 USC § 793(e), no evidence can be admitted, over defense objection, as to the manner in which the national

---

\* It would seem that in many instances the production can be accomplished in such a manner that it will not be incriminating. However, even

when this is not the case, the duty to produce the national defense documents still remains.

security documents were returned to the Government's possession.

Because I am convinced that 18 USC § 793(e) does not on its face violate the Fifth Amendment and would not be applied in a manner that created an unconstitutional risk of self-incrimination, I perceive no improvidence in appellant's guilty pleas to a violation of this statute. Therefore, I concur in affirming the conviction.