UNITED STATES, Appellee

v.

Nancy L. CASTILLO, Machinist's Mate Fireman
U.S. Navy, Appellant

No. 14-0724

Crim. App. No. 201300280

United States Court of Appeals for the Armed Forces

Argued February 11, 2015

Decided May 18, 2015

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, STUCKY, RYAN, and OHLSON, JJ., joined.

Counsel

For Appellant:  Lieutenant Carrie E. Theis, JAGC, USN (argued);
Lieutenant David W. Warning, JAGC, USN.

For Appellee: Captain Matthew M. Harris, USMC (argued); Brian K.
Keller, Esq. (on brief); Lieutenant Commander Keith Lofland,
JAGC, USN.


Military Judges:  Lewis T. Booker Jr. and Andrew H. Henderson

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

Contrary to her pleas, a special court-martial composed of officer and enlisted members convicted Appellant of offenses including violating a lawful general order by failing to report her arrest for drunk driving, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2012). The convening authority approved a sentence including a bad-conduct discharge, a $5,000 fine, and reduction to the lowest enlisted grade. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed. United States v. Castillo, No. NMCCA 201300280, slip op. at 16 (N-M. Ct. Crim. App. May 27, 2014). On Appellant's petition, we granted review of the following issue:

> WHETHER THE LOWER COURT IMPROPERLY DETERMINED THAT
> [THE] DUTY TO SELF-REPORT ONE'S OWN CRIMINAL ARRESTS
> FOUND IN OFFICE OF THE CHIEF OF NAVAL OPERATIONS
> INSTRUCTION 3120.32C WAS VALID DESPITE THE
> INSTRUCTION'S OBVIOUS CONFLICT WITH SUPERIOR AUTHORITY
> AND THE FIFTH AMENDMENT.

This appeal involves Appellant's challenge to the Chief of Naval Operations's regulatory requirement that servicemembers report to their immediate commander the fact that they were arrested for an offense by civilian authorities. Appellant's attack on the service instruction, Dep't of the Navy, Chief of Naval Operations Instr. 3120.32C, General Guidance and Regulations para. 510.6 (July 30, 2001) [hereinafter OPNAVINST

United States v. Castillo, No. 14-0724/NA

3120.32C], is twofold:  that it conflicts with superior regulatory authority; and that it facially compels self-incrimination in violation of the Fifth Amendment to the Constitution.

We conclude that the Navy clearly amended its self-reporting regulations in direct response to this Court's prior decision in United States v. Serianne, 69 M.J. 8 (C.A.A.F. 2010), and find Appellant's first regulatory argument unpersuasive.  We further conclude that -- while Appellant advances hypothetical applications of the Navy's self-reporting requirement that may raise constitutional questions -- she does not contend that her case presents an unconstitutional application of the regulation, and cannot meet her burden for successfully advancing a facial challenge, which requires the challenger to establish that "no set of circumstances exists under which the [regulation] would be valid."  United States v. Wright, 53 M.J. 476, 481 (C.A.A.F. 2000) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).[1]

BACKGROUND

In May 2010, this Court found that a service instruction requiring that sailors report their own arrests by civilian

---

[1] The standard for sustaining a facial challenge to constitutional validity remains the same, whether the challenge addresses a statute or a regulation.  See Reno v. Flores, 507 U.S. 292, 301 (1993).

3

authorities conflicted with superior regulatory authority.

Serianne, 69 M.J. at 11. The service instruction at issue in

Serianne provided that:

> Members arrested for an alcohol-related offense under civil
> authority, which if punished under the UCMJ would result in
> a punishment of confinement for 1 year or more, or a
> punitive discharge or dismissal from the Service (e.g.,
> DUI/DWI), shall promptly notify their CO. Failure to do so
> may constitute an offense punishable under Article 92,
> UCMJ.

The appellant in Serianne argued that this self-reporting

requirement violated his Fifth Amendment privilege against self-

incrimination. 69 M.J. at 9. We declined to address his

constitutional challenge, however, because we resolved the issue

in his favor on nonconstitutional grounds. Id. at 11 (citing

Ashwander v. TVA, 298 U.S. 288, 346–48 (1936) (Brandeis, J.,

concurring)). Specifically, we looked to U.S. Naval Regs.,

Article 1137 (1990), which addressed servicemembers' obligation

to report UCMJ offenses, but specifically exempted offenses in

which the servicemember was criminally involved. U.S. Naval

Regs., Article 1137, provided:

> Persons in the naval service shall report as soon as
> possible to superior authority all offenses under the
> Uniform Code of Military Justice which come under
> their observation, except when such persons are
> themselves already criminally involved at the time
> such offenses first come under their observation.

We concluded that the service instruction at issue in Serianne did not provide the protection against self-reporting established by U.S. Naval Regs., Article 1137. Thus, the service instruction promulgated by the Chief of Naval Operations was contrary to superior regulatory authority promulgated by the Secretary of the Navy, and did not provide a legal basis with which to charge Serianne with dereliction of duty under the UCMJ. Serianne, 69 M.J. at 11.

The Navy responded by amending its regulations.[2] In July 2010, the Secretary of the Navy released Dep't of the Navy, Secretary of the Navy, ALNAV 049/10 (July 21, 2010) [hereinafter ALNAV 049/10], an administrative message disseminated throughout the Navy with the subject line "Change to U.S. Navy Regulations in light of U.S. v. Serianne." The message stated that the change was "effective immediately," and in pertinent part, added new language to U.S. Naval Regs., Article 1137, authorizing self-reporting regulations:

> The Secretary of the Navy, Chief of Naval Operations, and Commandant of the Marine Corps may promulgate regulations or instructions that require servicemembers to report civilian arrests or filing of criminal charges if those regulations or instructions serve a regulatory or administrative purpose.

---

[2] The self-reporting requirement at issue in this case is a separate service instruction, not an amended version of the instruction at issue in Serianne. Our decision today is limited to the service instruction at issue, and does not address the constitutionality of other existing or conceivable self-reporting regulations.

ALNAV 049/10.

In December 2011, the Chief of Naval Operations released Dep't of the Navy, Chief Naval Officer, NAVADMIN 373/11 (Dec. 8, 2011) [hereinafter NAVADMIN 373/11], which amended OPNAVINST 3120.32C, the service instruction at issue in the case now before the Court. The instruction as amended requires self-reporting of arrests by civilian authorities, and prohibits commanders from taking disciplinary action regarding the underlying offense for which the servicemember was arrested, unless that disciplinary action is based on independent evidence:

> Any person arrested or criminally charged by civil authorities shall immediately advise their immediate commander of the fact that they were arrested or charged . . . . No person is under a duty to disclose any of the underlying facts concerning the basis for their arrest or criminal charges. Disclosure is required to monitor and maintain the personnel readiness, welfare, safety, and deployability of the force. Disclosure of arrest/criminal charges is not an admission of guilt and may not be used as such, nor is it intended to elicit an admission from the person self-reporting. No person subject to the Uniform Code of Military Justice (UCMJ) may question a person self-reporting an arrest/criminal charges regarding any aspect of the self-report, unless they first advise the person of their rights under UCMJ Article 31(b).
>
> . . . .
>
> Commanders shall not impose disciplinary action for failure to self-report an arrest or criminal charges prior to issuance of this NAVADMIN. In addition, commanders shall not impose disciplinary action for the underlying offense unless such action is based solely on evidence derived independently of the self-report.

6

. . . .

> Per this NAVADMIN, commanders may impose disciplinary
> action for failure to self-report an arrest or criminal
> charges.  However, when a servicemember does self-report
> pursuant to a valid self-reporting requirement, commanders
> will not impose disciplinary action for the underlying
> offense unless such disciplinary action is based solely on
> evidence derived independently of the self-report.
> Commanders should consult a judge advocate prior to
> imposing disciplinary action.
>
> . . . Commanders shall ensure their instructions do not
> include additional self-reporting requirements.

. . . .

In February 2012, Appellant was arrested in Kitsap County, Washington for driving under the influence.[3]  She did not report the arrest to her command.  Her command learned of the arrest during an unrelated visit to the local courthouse, during which one of her supervisors noticed her name on the court's docket. She was subsequently charged with violating a lawful order, to wit, wrongfully failing to report the arrest, in violation of Article 92, UCMJ.

Appellant unsuccessfully challenged the Navy's self-reporting requirement at trial, arguing that it conflicted with

---

[3] The new version of the Chief of Naval Operations's self-reporting requirement was published as OPNAVINST 3120.32D in July 2012.  Dep't of the Navy, Chief of Naval Operations Instr. 3120.32D, General Guidance and Regulations para. 5.1.6 (July 16, 2012).  NAVADMIN 373/11 makes clear, however, that the self-reporting requirement was amended in December 2011.  In other contexts, this Court has noted that NAVADMIN messages have substantive force.  See, e.g., United States v. Davis, 60 M.J. 469, 471 n.2 (C.A.A.F. 2005); United States v. Davis, 52 M.J. 201, 204 n.3 (C.A.A.F. 1999).

U.S. Naval Regs., Article 1137, and the Fifth Amendment.  She now pursues that argument on appeal from her conviction.  In Appellant's view, "[the] self-reporting requirement is clearly aimed at extracting information on criminal activity."  Thus, Appellant argues that the service instruction exceeds what U.S. Naval Regs., Article 1137, permits, and unconstitutionally compels self-incrimination by requiring the disclosure of a civilian arrest.  Because the regulation is directed toward criminal activity, under this view, it is not saved by any purported regulatory purpose.  See California v. Byers, 402 U.S. 424, 430 (1971) (plurality opinion) (finding no Fifth Amendment violation with a reporting requirement that is "essentially regulatory, not criminal"); United States v. Oxfort, 44 M.J. 337, 341 (C.A.A.F. 1996) (applying a three-part test to determine whether the regulatory exception applies).  The fact that commanders are prohibited from imposing discipline on the underlying arrested offense does not render the self-reporting requirement constitutional, according to Appellant, because the grant of immunity does not comply with Rule for Courts-Martial (R.C.M.) 704, and fails to provide immunity coextensive with the Fifth Amendment's protection against self-incrimination.  See United States v. Kastigar, 406 U.S. 441, 445–47 (1972).

The Government counters that, because the self-reporting requirement is regulatory in nature, it is authorized by U.S.

8

Naval Regs., Article 1137.  As a threshold matter, the Government advances the argument that an arrest is a matter of public record, and requiring that a servicemember disclose the mere fact of an arrest does not compel a communication that is testimonial and incriminating.  See Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 189 (2004) ("To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled.").  But even if the self-reporting requirement would otherwise be subject to Fifth Amendment analysis, in the Government's view, the requirement satisfies the regulatory exception criteria discussed in Oxfort.

The CCA agreed with the Government's position.  In the CCA's analysis, "the use restriction in NAVADMIN 373/11 . . . removed any real and appreciable danger of legal detriment for a self-reported arrest or criminal charge."  Castillo, No. NMCCA 201300280, slip op. at 10.  The CCA found that this conclusion removed the need to address whether the self-reporting requirement qualifies under the regulatory exception to the Fifth Amendment.  Nonetheless, the CCA proceeded to address whether the requirement was regulatory in nature to determine whether it was authorized by U.S. Naval Regs., Article 1137. Id.  Applying the seven-factor test from Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-70 (1963), the CCA concluded that the self-reporting requirement was regulatory rather than

9

punitive. Castillo, No. NMCCA 201300280, slip op. at 11. Thus, the CCA held that the self-reporting requirement is authorized by superior regulatory authority and not prohibited by the Fifth Amendment.

## DISCUSSION

## SUPERIOR REGULATORY AUTHORITY

Interpretation of a service instruction is a question of law, which we review de novo. Serianne, 69 M.J. at 10. The United States Navy Regulations serve as "the principal regulatory document of the Department of the Navy," and other regulations "shall not conflict with, alter or amend any provision of Navy Regulations." Id. at 11 (quoting U.S. Naval Regs., Article 0103). Thus, U.S. Naval Regs., Article 1137, as amended by the Secretary of the Navy through ALNAV 049/10, is superior regulatory authority in relation to the self-reporting requirement found in OPNAVINST 3120.32C.[4] If the self-reporting requirement conflicts with U.S. Naval Regs., Article 1137, then failure to adhere to the requirement cannot serve as the basis for a prosecution under Article 92, UCMJ. Serianne, 69 M.J. at 11.

_____

[4] This conclusion is bolstered by the fact that, except as otherwise provided by law, the Chief of Naval Operations acts "under the authority, direction, and control of the Secretary of the Navy and is directly responsible to the Secretary." 10 U.S.C. § 5033(c) (2012).

Our analysis begins with the plain text of U.S. Naval Regs., Article 1137.  As amended by ALNAV 049/10, the article authorizes the Chief of Naval Operations to promulgate "instructions that require servicemembers to report civilian arrests or filing of criminal charges if those regulations or instructions serve a regulatory or administrative purpose."  The article also retains its prior language stating that servicemembers are required to report "offenses under the Uniform Code of Military Justice which come under their observation, except when such persons are themselves already criminally involved in such offenses at the time such offenses first come under their observation."

Appellant contends that U.S. Naval Regs., Article 1137, is therefore internally inconsistent, because the long-standing provision that servicemembers need not report offenses in which they are criminally involved conflicts with the recent amendment specifically authorizing administrative regulations requiring the self-reporting of civilian arrests.  The problem for Appellant is that she would have us read one provision of a regulation to "make[] nonsense of" a second provision in the same regulation.  United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 374 (1988).  We decline to do so, particularly when the drafters' intent to amend U.S. Naval Regs., Article 1137, "in light of United States

11

v. Serianne" is obvious on its face. See Timbers, 484 U.S. at 375 (petitioner's proposed interpretation of one section would render a second section "a practical nullity and a[n] . . . absurdity").

Rather than read these two provisions to conflict with one another, we read them as a whole, and conclude that they do not conflict. See generally United States v. Harrison, 19 C.M.A. 179, 182, 41 C.M.R. 179, 182 (1970) (command directive is "read as a whole"). U.S. Naval Regs., Article 1137, directs that servicemembers need not report UCMJ offenses in which they themselves are "criminally involved," and that protection -- addressed to substantive reports of offenses, not factual reports of arrests -- survives the amendment at issue in this case. The amendment specifically authorizes regulations that require the self-reporting of arrests, and that requirement does not conflict with or alter the substantive protection against the required self-reporting of offenses.

We therefore conclude that the provision of U.S. Naval Regs., Article 1137, excepting from compulsory reporting offenses in which servicemembers are "themselves already criminally involved" does not conflict with the July 2010 amendment by ALNAV 049/10, which specifically authorizes regulations or instructions requiring the self-reporting of civilian arrests. This latter authorization, however, is

contingent upon the regulation serving "a regulatory or administrative purpose." The question of whether the self-reporting requirement serves such a purpose is also related to the question of whether the requirement conflicts with the Fifth Amendment, Oxfort, 44 M.J. at 341, and it is to that question we turn.

## FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

We review questions of constitutional law de novo, including the question of whether the self-reporting requirement conflicts with the Fifth Amendment privilege against self-incrimination. Serianne, 69 M.J. at 10. In pertinent part, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection addresses "real and appreciable, and not merely imaginary and unsubstantial, hazards of self-incrimination." Marchetti v. United States, 390 U.S. 39, 48 (1968) (citations omitted) (internal quotation marks omitted). "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel, 542 U.S. at 189.

This appeal necessarily arises in the context of a facial challenge to the self-reporting requirement, because Appellant did not incriminate herself, but rather contends that the service instruction unconstitutionally compels her to do so.

13

"Facial challenges . . . run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008) (citations omitted) (internal quotation marks omitted). Thus, a regulation will only be held to be facially unconstitutional when the challenger convinces the Court that "no set of circumstances exists under which the [regulation] would be valid." Wright, 53 M.J. at 481.

The questions before the Court are whether the self-reporting regulation can be applied in a manner that upholds the Constitution, and whether it was so applied to Appellant. We are not called to resolve "hypothetical situations designed to test the limits of" the regulation, such situations are properly the subject of future litigation with the benefit of a developed factual record. Holder v. Humanitarian Law Project, 561 U.S. 1, 22 (2010). Put another way, "[w]hat is not ready for decision ought not to be decided." Quill v. Vacco, 80 F.3d 716, 732 (2d Cir. 1996) (Calabresi, J., concurring in the result).

In asking whether the government may apply the self-reporting requirement in a manner that is constitutional, we look first to the nature of the compelled disclosure. As

14

implemented by NAVADMIN 373/11, the service instruction requires that a servicemember disclose "the fact that they were arrested or charged." The instruction proceeds further: "No person is under a duty to disclose any of the underlying facts concerning the basis for their arrest or criminal charges." And no person subject to the UCMJ may use this report to initiate disciplinary action absent an independent investigation, or to question the reporting servicemember absent an Article 31(b), UCMJ, 10 U.S.C. § 831 (2012), warning against self-incrimination.

The question then becomes whether the factual report of an arrest, accompanied by the safeguards against further questioning or prosecution contained in the service instruction, presents a "real and appreciable" hazard of self-incrimination, where the regulation is in fact followed as drafted. Marchetti, 390 U.S. at 48 (citations omitted) (internal quotation marks omitted). We conclude that it does not. In the first instance, we note that the mere fact of an arrest is a matter of public record. See Paul v. Davis, 424 U.S. 693, 713 (1976); Ficker v. Curran, 119 F.3d 1150, 1154 (4th Cir. 1997); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996). It communicates only that a police officer believed that probable cause existed to arrest an individual on suspicion of committing an offense. See Terry v. Ohio, 392 U.S. 1, 20 (1968) (arrest must be accompanied by warrant or probable cause).

15

Most importantly, although a reasonable argument exists that the compelled disclosure of an arrest by civilian authorities is testimonial and incriminating, the reporting requirement prohibits commanders from imposing disciplinary action on the basis of the underlying arrested offense,[5] "unless such disciplinary action is based solely on evidence derived independently of the self-report." See Kastigar, 406 U.S. at 453 ("[I]mmunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege."). Thus, even if the self-report would otherwise be incriminating because it (1) communicates a fact or information; and (2) that information may be used as the basis for military prosecution, or as a substantial link leading to additional incriminating evidence, Hiibel, 542 U.S. at 189–90, the functional immunity provided by the instruction allows the government to compel the disclosure.

Appellant argues that the restrictions on how the Navy may use the compelled report are not sufficient, because they do not

_____

[5] Appellant correctly notes that the service instruction itself does not define the "underlying offense," and leaves open the hypothetical possibility that the government will prosecute the arrested offense under a distinct charging theory, or will use the self-report to discover and charge some aspect of the interaction with civilian police other than the underlying offense. In these hypothetical cases, the accused remains free to argue that the prosecution violates his Fifth Amendment privilege against self-incrimination.

comply with R.C.M. 704, which governs grants of transactional and testimonial immunity. Further, Appellant contends that the service instruction does not bind commanders and cannot be enforced at court-martial. These arguments are not persuasive in the context of a facial challenge. First, the service instruction is a directive that "commanders shall not impose disciplinary action" on the basis of the self-report. Such a directive is not a grant of immunity governed by the Rules for Courts-Martial, although it functions to immunize the compelled disclosure against prosecution. Thus, while the service instruction may not bind commanders in a manner directly enforceable by a hypothetical accused, the accused remains free to argue that by disregarding the use restrictions in a particular case, the government violated his Fifth Amendment privilege against self-incrimination.

Appellant also contends that the regulation is aimed at compelling disclosures of criminal activity rather than achieving a regulatory purpose, and therefore violates the Fifth Amendment and exceeds the grant of authority in U.S. Naval Regs., Article 1137.[6] To evaluate this contention, we must look

---

[6] As we have concluded that the use restrictions provide functional immunity and allow the Government to compel the disclosure, we need not address this issue as a Fifth Amendment matter. We must determine whether the instruction serves a regulatory or administrative purpose, however, to determine

to the essential intent of the regulation. <u>Oxfort</u>, 44 M.J. at 341. In determining whether the drafters' intention is essentially regulatory or punitive, we find the seven factors identified in <u>Mendoza-Martinez</u>, 372 U.S. at 168–70, to be instructive, but decline to hold that they necessarily prescribe the required analysis in evaluating the essential intent of service regulations.[7]

The core inquiry of <u>Mendoza-Martinez</u>, <u>Byers</u>, and <u>Oxfort</u> is not the formulaic application of multifactor tests, but rather consideration of whether the challenged provision is grounded in a valid regulatory, as opposed to punitive, governmental purpose. In <u>Mendoza-Martinez</u>, the government sought to punish individuals who fled abroad in avoidance of conscription by revoking their citizenship through a statutory scheme without due process of law. 372 U.S. at 186. In <u>Byers</u>, by way of contrast, California's legitimate, nonpunitive state interests permitted a statute requiring motorists to stop and identify

---

whether it is authorized by U.S. Naval Regs., Article 1137. <u>See</u> <u>Castillo</u>, No. NMCCA 201300280, slip op. at 10.

[7] They are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it operates only upon a finding of scienter; (4) whether it will serve the traditional aims of punishment, i.e., retribution and deterrence; (5) whether it applies to behavior that is already a crime; (6) whether it serves an alternative (i.e., noncriminal) purpose; and (7) whether it is excessive in relation to that purpose. <u>Mendoza-Martinez</u>, 372 U.S. at 168–69.

themselves when involved in a vehicular accident.  402 U.S. at 433–34.  Similarly, in Oxfort, the government's nonpunitive interest in the return of national security information justified a statutory provision requiring unauthorized possessors of such information to deliver it to the government. 44 M.J. at 342.

Applying this core inquiry under OPNAVINST 3120.32C, we conclude that while the instruction does provide for sanctions for noncompliance, the instruction is drawn for a regulatory or administrative purpose.  On its face, the service instruction states that "[d]isclosure is required to monitor and maintain the personnel readiness, welfare, safety, and deployability of the force."  It does not target any highly selective group inherently suspect of criminal activities, Oxfort, 44 M.J. at 341, but rather applies to all members of the Navy.[8]  Further, as

---

[8] The inquiry of whether a regulation targets a highly selective group inherently suspect of criminal activities derives from an era in which the federal government targeted administrative actions against the Communist Party of the United States. Albertson v. Subversive Activities Control Bd., 382 U.S. 70, 71– 73 (1965).  A reasonable argument exists that individuals detained by the police should be viewed as such a class. Hiibel, 542 U.S. at 191–93 (Stevens, J., dissenting).  However, our view is that Byers provides the correct analogy, and that the regulation in this case applies to all members of the Navy, just as the statute in Byers applied to all California motorists, not merely those actually involved in vehicular accidents.  See Byers, 402 U.S. at 430 (the statute applies to "all persons who drive automobiles in California"); see also United States v. Heyward, 22 M.J. 35, 37 (C.M.A. 1986) (Air

discussed above, the service instruction provides safeguards against further questioning or military prosecution.[9]

We have no doubt that, for the reasons stated in the service instruction, the Navy has a legitimate administrative or regulatory interest in knowing whether sailors have been arrested by civilian authorities. We are further convinced, given the protections included in the service instruction, that the regulation is not drawn for a punitive purpose. As a result, the service instruction is facially constitutional and authorized by U.S. Naval Regs., Article 1137.

In this case, Appellant has ably advanced questions of constitutional law, and has directed our attention to issues that may arise in future cases. None of those issues are properly presented in this case, because Appellant was

_____

Force requirement to report drug abuse by others analogous to Byers).

[9] The fact that the regulation contemplates further questioning necessitating an Article 31(b), UCMJ, warning, in Appellant's view, demonstrates its punitive purpose. We disagree. In the first instance, this provision merely restates the law, which is that a military questioner operating in an official law enforcement or disciplinary capacity must warn the suspect against self-incrimination. United States v. Gilbreath, 74 M.J. 11, 12 (C.A.A.F. 2014). Read as a whole, the clear purpose of the regulation is to require self-reporting of an arrest while providing procedural safeguards against military prosecution for the underlying offense. In the hypothetical case where the government pursues additional questioning and brings a prosecution based on that questioning, the parties remain free to argue whether that questioning infringed on the Fifth Amendment privilege against self-incrimination in view of the required disclosure.

constitutionally prosecuted for the failure to report her civilian arrest under Article 92, UCMJ.  OPNAVINST 3120.32C as amended by NAVADMIN 373/11 is constitutional on its face, and any unconstitutional government action taken under color of the self-reporting requirement must be addressed in subsequent litigation.

CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.