*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
STEPHENS, DEERWESTER, and COGLEY
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Rance W. PERMENTER**
Sergeant (E-5), U.S. Marine Corps
*Appellee*

**No. 201900258**

Decided: 9 March 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Terrance J. Reese

Sentence adjudged 14 May 2019 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 24 months, and a dishonorable discharge.

For Appellant:
*Lieutenant Commander Christopher K. Riedel, JAGC, USN*

For Appellee:
*Lieutenant Jennifer M. Joseph JAGC, USN*

Judge COGLEY delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge DEERWESTER joined.

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

—————————————

COGLEY, Judge:

Appellant was convicted, consistent with his pleas, of attempted wrongful sale of military property, conspiracy to steal and wrongfully sell military property, dereliction of duty for failing to report stolen military property, violation of a lawful general order by wrongfully possessing an unregistered firearm in base family housing, wrongful sale of military property, theft of military and government property, housebreaking, obstructing justice, adultery, and receiving stolen property in violation of Articles 80, 81, 92, 108, 121, 130, and 134, Uniform Code of Military Justice [UCMJ].[1]

After Appellant raised no assignments of error, this Court specified three issues:

> I. *Whether Specifications 2 and 3 of Charge I should be merged into one specification because they address the same conspiracy?*
>
> II. *Whether there is a substantial basis to question the providence of Appellant's guilty plea to Specification 1 of Charge VI (willful dereliction of duty) because the guilty plea inquiry raised a possible defense, to wit: the privilege against self-incrimination, but the military judge did not conduct an adequate inquiry of this possible defense?*
>
> III. *Whether there is a substantial basis to question the providence of Appellant's guilty plea to Specification 3 of Charge VII (receiving stolen property) because the guilty plea raised a possible defense, to wit: that the "actual thief" or a principle to the larceny may not be found guilty of both stealing and receiving the same property, but the military judge did not conduct an adequate inquiry of this possible defense?*

—————————————

[1] 10 U.S.C. §§ 880, 881, 892, 908, 921, 930, 934. The Government withdrew two specifications of false official statement, in violation of Article 107, 10 U.S.C. § 907, after Appellant pleaded not guilty to them.

Appellant now requests that we reassess the sentence. We find merit in all three specified issues, and set aside and dismiss three of the specifications in our decretal paragraph. After reassessing the sentence, we determine the sentence would be unchanged. We affirm the remaining findings and the reassessed sentence.

## I. BACKGROUND

Appellant was a military police [MP] officer assigned to patrol Camp Geiger, North Carolina. Camp Geiger had an unsecured warehouse containing military property. Appellant conspired with two other MPs, Corporal [Cpl] Tango[2] and Cpl Hotel, and also with his own wife, to steal the military property on multiple occasions and sell it to local pawn shops and online. Appellant also brought another woman into the enterprise with whom he was having an extra-marital romantic relationship. Appellant entered the unsecured warehouse and stole property on five or more occasions and later sold, or attempted to sell, the stolen property. Sometimes Appellant entered the warehouse alone; other times he entered with one of his co-conspirators.

This scheme began when Appellant and Cpl Hotel were drinking. Appellant told Cpl Hotel about the warehouse that he noticed while making his rounds. Cpl Hotel—who was already an experienced thief—and Appellant decided to go to the warehouse to steal military property, a tactical vest and three sleeping bags. Appellant acted as a lookout, while Cpl Hotel went inside and stole the items. When they returned to Cpl Hotel's home, they split up the gear and agreed to sell to different pawn shops. They also agreed they could each keep whatever profit they received from the sale of the goods.

At a later date, while on patrol with Cpl Tango, Appellant introduced him to the unsecured warehouse. The two MPs stole additional military property. Appellant went back to the unsecured warehouse at least five times to steal property and was on duty as an MP on three of those occasions. On some of those occasions, Appellant was joined by Cpl Tango. Appellant also enlisted his wife to assist him with selling the stolen military property.

Eventually Appellant pleaded guilty to the following charges:

> Conspiracy with Cpl Tango to Commit Larceny of Military
> Property [Charge I, Specification 1];

---

[2] All names in this opinion, other than those of Appellant, the judges, and counsel are pseudonyms.

Conspiracy with Cpl Hotel to Commit Larceny of Military Property [Charge I, Specification 2] and Wrongful Sale of Military Property [Charge I, Specification 3];

Conspiracy with Appellant's wife to Commit Wrongful Sale of Military Property [Charge I, Specification 4];

Housebreaking into the warehouse aboard Camp Geiger [Charge II];

Larceny of Military Property, that could generally be considered military-specific items such as sleeping bags, supply items, and other tactical gear [Charge III, Specification 1];

Larceny of Government Property, that could generally be considered civilian use items such as power tools [Charge III, Specification 2];

Wrongful Sale of Military Property to the Southern Trade Emporium of sleeping bags and other tactical gear [Charge IV, Specification 1];

Wrongful Sale of Military Property to The Bargain Shop of sleeping bags [Charge IV, Specification 2];

Attempted Wrongful Sale of Military Property of sleeping bags to a Criminal Investigation Division [CID] agent [Charge V];

Dereliction of Duty by willfully failing to report stolen military property [Charge VI, Specification 1];

Violating a Lawful General Order by having an unregistered privately owned firearm in his on-base home [Charge VI, Specification 2];

Obstructing Justice by telling Cpl Tango to "get rid of" stolen military property [Charge VII, Specification 1];

Adultery by having sexual intercourse with a woman not his wife [Charge VII, Specification 2]; and

Receiving stolen military property from Cpl Hotel, which was one tactical vest and three sleeping bags [Charge VII, Specification 3].

During the guilty plea, it became apparent there was some overlap in the Government's charging scheme. Though the Stipulation of Fact covered the basic elements of the various specifications, more inquiry was needed. We now examine whether the conspiracy to commit larceny of military property

with Cpl Hotel and the conspiracy to commit the wrongful sale of military property with Cpl Hotel [Specifications 2 and 3 of Charge I] were part of the same conspiracy agreement.

The guilty plea also appeared to raise two possible defenses for Appellant. First, we examine whether Appellant's duty to report the theft of some of the military equipment that he himself participated in stealing conflicted with his right to not incriminate himself [Charge VI, Specification 1]. Second, we examine when Appellant received stolen property, whether he "received" the same property he participated in stealing.

## II. DISCUSSION

### A. Standard of Review

We review a military judge's decision to accept a guilty plea for abuse of discretion.[3] Guilty pleas will not be set aside on appeal unless there is "a substantial basis in law and fact for questioning [such pleas]."[4] "A military judge abuses his discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference."[5]

A military judge may not accept a guilty plea unless he determines there is a sufficient factual basis for every element of the offenses to which the accused pleaded guilty.[6] The required factual predicate may be established through inquiry of the accused or through stipulations of fact entered into by the government.[7] A providence inquiry into a guilty plea must establish that the accused believes and admits he is guilty of the offense, and the factual circumstances admitted by the accused objectively support the guilty plea.[8] "[M]ere conclusions of law recited by an accused . . . are insufficient to

---

[3] *United States v. Simmons*, 63 M.J. 89, 92 (C.A.A.F. 2006).

[4] *United States v. Phillipe*, 63 M.J. 307, 309 (C.A.A.F. 2006) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

[5] *United States v. Caldwell*, 72 M.J. 137, 144 (C.A.A.F. 2013) (quoting *United States v. Inabinette*, 62 M.J. 320, 322 (C.A.A.F. 2008)).

[6] *Simmons*, 63 M.J. at 92. *See also* Rule for Courts-Martial [R.C.M.] 910(e), discussion.

[7] *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011).

[8] *United States v. Garcia,* 44 M.J. 496, 497-98 (C.A.A.F. 1996).

provide a factual basis for a guilty plea."[9] However, we must remain "cognizant that in guilty-plea cases the quantum of proof is less than that required at a contested trial."[10]

"In summary we review a judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo."[11] "It is possible to have a factually supportable plea, yet still have a substantial basis in law for questioning it. This might happen where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless is not advised of an available defense or states matters inconsistent with the plea that are not resolved by the military judge."[12]

## B. Specifications 2 and 3 of Charge I Address the Same Conspiracy

"A single agreement to commit multiple offenses ordinarily constitutes a single conspiracy."[13] In *United States v. Pereira*,[14] the Court of Appeals for the Armed Forces [CAAF] consolidated three specifications alleging conspiracy to commit murder, robbery, and kidnapping from one agreement.[15] In *United States v. Braverman*, the Supreme Court explained that whether the object of a single agreement is to commit one or many crimes, it is the single agreement which constitutes the conspiracy which the statute punishes. "The one agreement cannot be taken to be several agreements and hence several conspiracies."[16]

Appellant and Cpl Hotel made a single agreement to steal the military property, divide up the items, and sell them to local pawn shops. During the providence inquiry, the military judge specifically asked whether the two alleged conspiracies "took place during, like, the same discussion?"[17] The military judge then repeatedly asked for confirmation from Appellant that the agreements were part of the same discussion. Appellant confirmed they

---

[9] *United States v. Jordan,* 57 M.J. 236, 239 (C.A.A.F. 2002) (quoting *United States v. Outhier,* 45 M.J. 326, 331 (C.A.A.F. 1996)).

[10] *United States v. Pinero*, 60 M.J. 31, 33 (C.A.A.F. 2004).

[11] *Inabinette,* 62 M.J. at 322.

[12] *Id.* at 322.

[13] *United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000).

[14] *Id.*

[15] *Id., see also, Braverman v. United States*, 317 U.S. 49 (1942).

[16] *Braverman*, 317 U.S. at 52-3.

[17] R. at 112.

were.[18] When asked if further inquiry was warranted, the trial counsel requested clarification as to when the [multiple] conspiracies were discussed. In response, Appellant admitted there had been a "separate occasion when [Cpl Hotel] reached out to me. He wanted to go sell the military property on a specific occasion, which was a weekend we were off, I believe."[19] This was not a new and separate conspiracy to commit wrongful sale of military property, but rather an additional act in furtherance of their original conspiracy to steal and sell the military property. We find this explanation during the providence inquiry, including the trial counsel's attempt at clarification, revealed there was a later conversation confirming a specific time to further carry out the existing conspiracy. Appellant's response did not indicate the second conversation was the initiation of a new agreement, it was simply a clarification of the original agreement.

While the Government argues this issue should be resolved through the application of the doctrine of unreasonable multiplication of charges, we find as a matter of law that the record, as developed by Appellant's answers during the providence inquiry and the contents of the stipulation of fact, only supports the existence of a single conspiracy. Because these two specifications concerned the same single agreement, they must be consolidated into one specification and we take such action in our decretal paragraph.

## C. The Specification for Willful Dereliction of Duty Raised the Defense of Self-Incrimination

The Fifth Amendment to the Constitution states that "No person. . . shall be compelled in any criminal case to be a witness against himself."[20] Article 31 states that "No person subject to this chapter may compel any person to incriminate himself or to answer any question which might tend to incriminate him."[21]

Under *United States v. Inabinette*, we must determine whether there is "something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea."[22] "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent

---

[18] *Id*. at 110-13.

[19] *Id*. at 116.

[20] U.S. Const. amend V.

[21] UCMJ art. 31(a).

[22] *Inabinette*, 62 M.J. at 322.

inconsistency or reject the plea."[23] "An affirmative defense to a charged offense would, by definition, constitute a matter "inconsistent with the plea" of guilty and therefore the military judge must resolve the apparent inconsistency or reject the plea."[24]

During the providence inquiry, Appellant was asked by the military judge to explain why he thought he was guilty of dereliction of duty for failing to report "stolen military property" as alleged in Specification 1 of Charge VI. Appellant initially discussed his failure to report Cpl Tango's possession of stolen military property. But the Stipulation of Fact only spoke to a failure to report Cpl *Hotel's* possession and involvement in stolen military property.[25] Later in the providence inquiry, the trial counsel clarified that the specification went to Appellant's failure to report Cpl Hotel's involvement in stolen military property.

The military judge asked Appellant if he "also had knowledge that [Cpl Hotel] had stolen property from the building."[26] Appellant replied that it was the "same building" and that "me and him traveled to the same warehouse, Sir, and we both stole military property."[27] The trial counsel later argued that the dereliction of duty regarding Cpl Hotel's stolen property was because Appellant knew just prior to the conspiracy agreement, that Cpl Hotel had stolen military property from the warehouse. But the problem with this argument is that, it is not sufficiently supported by the facts in this record as developed by Appellant's responses during the providence inquiry and the contents of the stipulation of fact, this was not entirely clear to Appellant. The military judge did not clear up the factual foundation for the specification. This would have included a clear explanation to Appellant that he may have a legal defense to this specification because he could not be required to report criminal conduct that he was himself part of without violating his right against self-incrimination.[28]

As a result, we find the military judge failed to resolve an inconsistency by not addressing a potential defense to the charge of dereliction of duty.

---

[23] *Phillipe,* 63 M.J. at 309 (internal citations omitted).

[24] *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012), *citing* ARTICLE 45 UCMJ, *Phillipe* 63 M.J. at 309.

[25] Pros. Ex. 1 at 15-16.

[26] R. at 59.

[27] *Id.*

[28] *United States v. Castillo*, 74 M.J. 160, 165-66 (C.A.A.F. 2015).

Therefore, we take action to set aside and dismiss Specification 1 of Charge IV in our decretal paragraph.

## D. There is a Substantial Basis to Question Whether Appellant Can Be Guilty of Both Stealing and Receiving the Same Property

"Frequently a person found in possession of recently stolen property is charged both with the larceny of that property and with receiving stolen property. While such charges may be warranted by exigencies of proof . . . the general rule is that the trier of fact may not find the accused guilty of both charges."[29] In the event an accused is found guilty of both larceny and receiving stolen property for the same property, the accused is entitled to have the finding of guilty for receiving stolen property set aside.[30]

Specification 1 of Charge III, Larceny of Military Property, details 28 different types of military supply items, such as sleeping bags, gas mask canisters, and body armor vests. There are a total of 125 stolen items. None of the items are serialized or individually identified. For example, the specification alleges that "(20) 3 Season Sleeping Bags, Regular, 2d Generation" and "(4) Improvised Modular Tactical Vests (IMTV), complete" were stolen. Specification 3 of Charge VII, Receiving Stolen Property, alleges that Appellant received "(1) Complete Improvised Modular Tactical Vest (IMTV)" and "(3) 3 Season Sleeping Bags, Regular, 2d Generation" and did so knowing they had been stolen, which was conduct to the prejudice of good order and discipline and of a nature to be service discrediting. No identifying information was given about the individual items that Appellant had received to distinguish them from items he stole.

The military judge and Appellant had a lengthy colloquy concerning his receipt of the stolen military property. It became clear that the specification alleged Appellant had "received" stolen military property from Cpl Hotel when they went to the warehouse together while Appellant acted as the lookout. Once they were back at Cpl Hotel's home, he gave Appellant a portion of the stolen military property, which was the single tactical vest and the three sleeping bags. It appears from the record that Appellant "received" the same military property he helped steal.

Again, the military judge failed to explore the possibility of a legal defense to this specification—specifically, that Appellant could not receive the same

---

[29] *United States v. Cartwright*, 13 M.J. 174, 175 (C.M.A. 1982) (citing *United States v. Gaddis*, 424 U.S. 544, 550 (1976)).

[30] *Id.* at 177-78.

property he also stole—and either "resolve the apparent inconsistency or reject the plea."[31] For this reason, we find that Specification 3 of Charge VII (Receiving Stolen Property) should be set aside and dismissed.

**E. Sentence Reassessment**

We have consolidated Specification 2 [Conspiracy to Commit Larceny of Military Property] and Specification 3 [Conspiracy to Commit Wrongful Sale of Military Property] of Charge I into Specification 2 of Charge 1, and thereafter set aside and dismissed Specification 3 of Charge I. We have also set aside and dismissed Specification 1 of Charge VI [Dereliction of Duty], and set aside and dismissed Specification 3 of Charge VII [Receiving Stolen Property]. Thus, we must determine if we are able to reassess Appellant's sentence.

We have "broad discretion" when reassessing sentences.[32] However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity . . ."[33] A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense[s] involved."[34]

In determining whether to reassess a sentence or to order a sentencing rehearing, we consider the factors set forth by CAAF in *United States v. Winckelmann*: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct and whether significant or aggravating circumstances remain admissible and relevant; and (4) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial.[35]

Considering all of the *Winckelmann* factors and the circumstances of this case, we find that we can reassess the sentence and it is appropriate for us to do so. The penalty landscape is relatively unchanged, with the maximum confinement being reduced from 92 years and 6 months to 79 years. And the remaining offenses capture the same gravamen of criminal conduct and the

---

[31] *Phillipe,* 63 M.J. at 309.

[32] *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).

[33] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

[34] *Id.*

[35] *Winckelmann*, 73 M.J. at 15-16.

aggravating circumstances, including Appellant's position as a military police officer, remain unchanged.

We can confidently and reliably determine that, absent the error, Appellant's sentence would still include at least reduction to E-1, confinement for 24 months, and a dishonorable discharge. We find this sentence to be an appropriate punishment for the remaining convictions and this offender— thus satisfying the requirement for a reassessed sentence both purged of error and appropriate.[36]

## III. CONCLUSION

Specification 3 of Charge I is merged into Specification 2 of Charge I. Thereafter, Specification 3 of Charge I is SET ASIDE and DISMISSED. Additionally, Specification 1 of Charge VI, and Specification 3 of Charge VII are SET ASIDE and DISMISSED. The findings for the merged specification and the remaining findings and the sentence as reassessed are AFFIRMED.

Senior Judge STEPHENS and Judge DEERWESTER Concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[36] *Sales*, 22 M.J. at 308.